CRAIG NEEDHAM (SBN 52010)
KIRSTEN FISH (SB #217940)
**NEEDHAM, DAVIS, KEPNER, & YOUNG, LLP**
1960 The Alameda, Suite 210
San Jose, CA 95126
Tel:   (408) 244-2166
Fax:   (408) 244-7815

**TINSMAN & SCIANO, INC.**
DANIEL J.T. SCIANO (Admitted *Pro Hac Vice*)
10107 McAllister Freeway
San Antonio, Texas 78216
Telephone: (210) 225-3121
Fax: (210) 225-6235

*Attorneys for Plaintiffs, JEREMY JAMES
EHART, KRISTY EHART, and STEVEN
RYAN McCLANAHAN*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEREMY JAMES EHART, KRISTY EHART, and STEVEN RYAN McCLANAHAN,<br><br>Plaintiffs,<br><br>vs.<br><br>GHILLIE SUITS.COM INC.; TODD MUIRHEAD; NEW YORK FIRE-SHIELD INCORPORATED; WACKENHUT SERVICES, INCORPORATED; THE WACKENHUT CORPORATION; and DOES 1 – 50, inclusive,<br><br>Defendants. | No. 5:06-CV-6507-JW<br><br>**STIPULATION AND [PROPOSED] ORDER FOR FILING OF FIRST AMENDED COMPLAINT FOR DAMAGES** |

IT IS HEREBY STIPULATED by and between the parties hereto, through their respective

attorneys of record, that the Plaintiffs may file their First Amended Complaint for Damages, a copy

of which is attached hereto.

-1-

*IT IS SO ORDERED
AS MODIFIED*

Judge James Ware

Respectfully submitted,

TINSMAN & SCIANO, INC.

Dated: 2/26/08

By: _____
    Daniel J. T. Sciano

And

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

Dated: _____

By: _____
    Craig Needham
Attorneys for Plaintiffs JEREMY JAMES
EHART, KRISTY EHART and STEVEN
RYAN MCCLANAHAN

MANNING & MARDER, KASS, ELLROD,
RAMIREZ LLP

Dated: _____

By: _____
    Mike Smith
Attorneys for Defendants WACKENHUT
SERVICES, INCORPORATED and THE
WACKENHUT CORPORATION

SELMAN BREITMAN LLP

Dated: _____

By: _____
    Paul Stephan
Attorneys for Defendants GHILLIE
SUITS.COM, INC, and TODD MUIRHEAD

ARCHER NORRIS

Dated: 2/26/08

By: _____
    Sharon Collier
Attorneys for Defendant NEW YORK FIRE-
SHIELD INCORPORATED

STIPULATION FOR FILING AMENDED COMPLAINT          CASE NO. 5:06-CV-6507-JW

Respectfully submitted,

TINSMAN & SCIANO, INC.

By: _____
    Daniel J. T. Sciano

And

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

By: _____
    Craig Needham
Attorneys for Plaintiffs JEREMY JAMES
EHART, KRISTY EHART and STEVEN
RYAN MCCLANAHAN

MANNING & MARDER, KASS, ELLROD,
RAMIREZ LLP

By: _____
    Mike Smith
Attorneys for Defendants WACKENHUT
SERVICES, INCORPORATED and THE
WACKENHUT CORPORATION

SELMAN BREITMAN LLP

By: _____
    Paul Stephan
Attorneys for Defendants GHILLIE
SUITS.COM, INC, and TODD MUIRHEAD

ARCHER NORRIS

By: _____
    Sharon Collier
Attorneys for Defendant NEW YORK FIRE-
SHIELD INCORPORATED

Dated: _____

Dated: _2·15·08_

Dated: _____

Dated: _____

Dated: _____

Respectfully submitted,

TINSMAN & SCIANO, INC.

Dated: _____  By: _____
                             Daniel J. T. Sciano

And

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

Dated: _____  By: _____
                             Craig Needham
                             Attorneys for Plaintiffs JEREMY JAMES
                             EHART, KRISTY EHART and STEVEN
                             RYAN MCCLANAHAN

MANNING & MARDER, KASS, ELLROD,
RAMIREZ LLP

Dated: 2/2/07  By: _____
                             Mike Smith
                             Attorneys for Defendants WACKENHUT
                             SERVICES, INCORPORATED and THE
                             WACKENHUT CORPORATION

SELMAN BREITMAN LLP

Dated: _____  By: _____
                             Paul Stephan
                             Attorneys for Defendants GHILLIE
                             SUITS.COM, INC, and TODD MUIRHEAD

Respectfully submitted,

Tinsman & Sciano, Inc.

Dated: _____     By: _____
                       Daniel J. T. Sciano

And

Needham, Davis, Kepner & Young, LLP

Dated: _____     By: _____
                       Craig Needham
Attorneys for Plaintiffs JEREMY JAMES
EHART, KRISTY EHART and STEVEN
RYAN MCCLANAHAN

Manning & Marder, Kass, Ellrod, Ramirez LLP

Dated: _____     By: _____
                       Mike Smith
Attorneys for Defendants WACKENHUT
SERVICES, INCORPORATED and THE
WACKENHUT CORPORATION

Selman Breitman LLP

Dated: Feb 22/08     By: _____
                       Paul Stephan
Attorneys for Defendants GHILLIE
SUITS.COM, INC, and TODD MUIRHEAD

-2-

**[PROPOSED] ORDER**

Pursuant to the Stipulation above, Plaintiffs may file their First Amended Complaint for Damages. **Plaintiffs shall file their First Amended Complaint for Damages within ten (10) days from the date of this Order as a *separate* docket entry.**

IT IS SO ORDERED

Dated: March 4, 2008

JAMES WARE
United States District Judge

1  CRAIG NEEDHAM (SBN 52010)
   KIRSTEN FISH (SB #217940)
2  **NEEDHAM, DAVIS, KEPNER, & YOUNG, LLP**
   1960 The Alameda, Suite 210
3  San Jose, CA 95126
   Tel:   (408) 244-2166
4  Fax:   (408) 244-7815

5  **TINSMAN & SCIANO, INC.**
   DANIEL J.T. SCIANO (Admitted *Pro Hac Vice*)
6  10107 McAllister Freeway
   San Antonio, Texas 78216
7  Telephone: (210) 225-3121
   Fax: (210) 225-6235

8
   *Attorneys for Plaintiffs, JEREMY JAMES*
9  *EHART, KRISTY EHART, and STEVEN*
   *RYAN McCLANAHAN*

10

11          IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15  JEREMY JAMES EHART, KRISTY          No. 5:06-CV-6507-JW
    EHART, and STEVEN RYAN
16  McCLANAHAN,                         **PLAINTIFF'S FIRST AMENDED
                                        COMPLAINT FOR DAMAGES**
17          Plaintiffs,
                                        **DEMAND FOR JURY TRIAL**
18      vs.

19  GHILLIE SUITS.COM INC.; TODD
    MUIRHEAD; NEW YORK FIRE-SHIELD
20  INCORPORATED; WACKENHUT
    SERVICES, INCORPORATED; THE
21  WACKENHUT CORPORATION; and
    DOES 1 – 50, inclusive,
22
            Defendants.

23

24      Plaintiffs, JEREMY JAMES EHART, KRISTY EHART, and STEVEN RYAN

25  McCLANAHAN (referred to collectively as "Plaintiffs") complain of Defendants, GHILLIE

26  SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM (referred to as "Ghillie

27  Suits.com"); TODD MUIRHEAD (referred to as "Muirhead"); NEW YORK FIRE-SHIELD

EXHIBIT _____A_____

INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW YORK FIRE-SHIELD, INC. (referred to as "New York Fire-Shield"); WACKENHUT SERVICES, INCORPORATED (referred to as "Wackenhut"); GARLAND COMPANY INC., D/B/A and/or A/K/A FIRE SHIELD WEST, and/or FIRE SHIELD WEST as a division of GARLAND COMPANY, INC. (referred to as "Fire Shield West") formerly designated as DOE 6; GARY B. CROSSLAND, individually (referred to as "Crossland") formerly designated as DOE 7; and Defendants whose names are unknown and are given the fictitious name of DOES 1-5 and DOES 8-50 (collectively referred to as "Defendants") as follows:

## **GENERAL ALLEGATIONS**

1.     At all times mentioned herein, Plaintiff JEREMY JAMES EHART is an individual citizen and resident of the County of Reno, State of Kansas.

2.     At all times mentioned herein, Plaintiff KRISTY EHART is an individual citizen and resident of the County of Reno, State of Kansas.

3.     At all times mentioned herein, Plaintiff STEVEN RYAN McCLANAHAN is an individual citizen and resident of the County of Summers, State of West Virginia.

4.     At all times mentioned herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM is a corporation duly organized and existing under the laws of the State of Georgia, with its principle place of business in the State of Georgia. At all times mentioned herein, Defendant GHILLIE SUITS.COM INC., D/B/A AND A/K/A GHILLIE SUITS.COM engaged in substantial, continuous and systematic activities in the State of California. By advertising for sale and selling its products in the State of California via its interactive commercial website, said defendant entered into repeated sales contracts with the residents of the State of California knowing that it would receive commercial gain and therefore purposefully availed itself of the privilege of conducting activities in the State of California. Said defendant has taken deliberate actions within the State of California and has created obligations to residents in the State of California through sales of its products on its website. Plaintiffs' claims arose out of or resulted

from said defendant's conduct of selling its products in the State of California.

5.     At all times mentioned herein, Defendant TODD MUIRHEAD is an individual citizen and resident of the State of Georgia.  At all times mentioned herein, Defendant TODD MUIRHEAD is the registered patent owner of the ghillie suit product at issue.  By advertising for sale and selling said products in the State of California via his interactive commercial website, said defendant entered into repeated sales contracts with the residents of the State of California knowing that he would receive commercial gain and therefore purposefully availed himself of the privilege of conducting activities in the State of California.  Said defendant has taken deliberate actions within the State of California and has created obligations to residents in the State of California through sales of its products on its website.  Plaintiffs' claims arose out of or resulted from said defendant's conduct of selling its products in the State of California.

6.     At all times mentioned herein, Defendant NEW YORK FIRE-SHIELD INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW YORK FIRE-SHIELD, INC. is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State of New York.  At all times mentioned herein, Defendant NEW YORK FIRE-SHIELD INCORPORATED, D/B/A AND A/K/A N.Y. FIRE-SHIELD, INC. and D/B/A AND A/K/A NEW YORK FIRE-SHIELD, INC. engaged in substantial, continuous and systematic activities in the State of California.  By advertising for sale and selling its products in the State of California via its interactive commercial website, said defendant entered into repeated sales contracts with the residents of the State of California knowing that it would receive commercial gain and therefore purposefully availed itself of the privilege of conducting activities in the State of California.  Said defendant has taken deliberate actions within the State of California and has created obligations to residents in the State of California through sales of its products on its website.  Plaintiffs' claims arose out of or resulted from said defendant's conduct of selling its products in the State of California.

7.     At all times mentioned herein, Defendant WACKENHUT SERVICES, INCORPORATED is a corporation duly organized and existing under the laws of the State of

Florida, with its principal place of business in the State of Florida. At all times mentioned herein, Defendant WACKENHUT SERVICES, INCORPORATED engaged in substantial, continuous and systematic activities in the State of California. By advertising for sale and selling its products and services in the State of California via its interactive commercial website, said defendant entered into sales and service contracts with the residents of the State of California knowing that it would receive commercial gain and therefore purposefully availed itself of the privilege of conducting activities in the State of California. Said defendant has taken deliberate actions within the State of California and has created obligations to residents in the State of California through sales of its services on its website. Plaintiffs' claims arose out of or resulted from said defendant's conduct of selling its services in the State of California.

8.     Upon the discovery of the true name of DOE 6, at all times mentioned herein substitutes the fictitious name of DOE 6 for Defendant GARLAND COMPANY INC., D/B/A and/or A/K/A FIRE SHIELD WEST, and/or FIRE SHIELD WEST as a division of GARLAND COMPANY, INC., is a corporation duly organized and existing under the laws of the State of Texas, with its principal place of business in the State of Texas. At all times mentioned herein, Defendant GARLAND COMPANY INC., D/B/A and/or A/K/A FIRE SHIELD WEST, and/or FIRE SHIELD WEST as a division of GARLAND COMPANY, INC. engaged in substantial, continuous and systematic activities in the State of California. Furthermore, Defendant engaged in acts and/or consummated transactions by which they purposefully availed themselves of the privilege of conducting activities in the forum State of California. By engaging in business activities, there was a reasonable expectation that the product at issue would enter into the stream of commerce and either directly or indirectly reach its ultimate users, including Plaintiffs. Plaintiffs' claims against said Defendant arise out of and/or result from said Defendants' forum-related activities; therefore the exercise of such jurisdiction is reasonable.

9.     Upon the discovery of the true name of DOE 7, at all times mentioned herein substitutes the fictitious name of DOE 7 for Defendant GARY B. CROSSLAND, individually, is an individual residing in the State of Texas, who, by his actions, engaged in substantial, continuous and

systematic activities in the State of California. Furthermore, Defendant GARY B. CROSSLAND, individually, engaged in acts and/or consummated transactions by which he purposefully availed himself of the privilege of conducting activities in the forum State of California. By engaging in business activities, there was a reasonable expectation that the product at issue would enter into the stream of commerce and either directly or indirectly reach its ultimate users, including Plaintiffs. Plaintiffs' claims against said Defendant arise out of and/or result from said Defendant's forum-related activities; therefore the exercise of such jurisdiction is reasonable.

10. The true names and/or capacities, whether individual, partnership, corporate, associate, or otherwise of Defendants, DOES 1 through 5 and 8 through 50, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names and will ask leave to amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and on such information and belief, allege that each of the Defendants designated herein as DOE is responsible in some manner for the events and happenings herein referred to, and that there is now due, owing and unpaid from said Defendants, and each of them, to Plaintiffs, the sums which are hereinafter alleged.

11. At all relevant times, each of the Defendants was the agent, principal, servant, master, employee, employer, partner, joint venturer, alter ego, aider and abettor, co-conspirator, enterprise, franchisee and/or franchisor of each of the other Defendants. At all relevant times, and with regard to all relevant tortuous conduct herein alleged, each of said Defendants was acting within the course and scope and in furtherance of the object of said agency, service, employment, partnership, joint venture, conspiracy, enterprise, and/or franchise. At all times herein mentioned, each of the Defendants was the agent, servant, employee, partner, joint venturer, and/or franchisee of each of the remaining Defendants herein, and were at all times acting within the purpose and scope of said agency, service, employment, partnership, joint venture, and/or franchise.

## JURISDICTION

12. Plaintiffs refer to paragraphs 1-11 as set forth above and by this reference incorporate

the same herein as though set forth in full.

13.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §1332 based on the diversity of the parties' citizenship and the amount in controversy, which exceeds $75,000, exclusive of interest and costs.

## VENUE

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 in that the claim arose in this District.

## INTRADISTRICT ASSIGNMENT

15.     Pursuant to Local Rule 3-2(e), this case is properly assigned to the San Jose Division in that the claim arose in the County of Monterey, State of California.

## FACTUAL ALLEGATIONS

16.     Plaintiffs refer to paragraphs 1-15 as set forth above and by this reference incorporate the same herein as though set forth in full.

17.     Severe burn injuries occurred to Plaintiff Jeremy Ehart, a Lance Corporal in the United States Marine Corps, and Plaintiff Steven R. McClanahan, a Corporal in the United States Marine Corps, on October 28, 2004 while participating in a military exercise at Fort Hunter Liggett, located in the City of Jolon, County of Monterey, State of California.

18.     Approximately twenty-five Marines were assigned to participate in Exercise Pacific Patriot at Fort Hunter Liggett, sponsored by the Department of Energy ("D.O.E."), from October 5, 2004 to November 5, 2004. The D.O.E. provided all gear, equipment and weapons for the exercise.

19.     Defendant Wackenhut was involved in the acquisition of the gear and equipment used during Exercise Pacific Patriot, including the acquisition of 15 commercial ghillie suits purchased from Defendants Todd Muirhead and Ghillie Suits.com. Said ghillie suits consisted of a blouse and pair of trousers and were Desert Storm era desert utilities with jute fabric sewn onto

-6-

them.

20. Defendants Muirhead and Ghillie Suits.com provided thirty 8-ounce bottles of "Inspecta-Shield" Class "A" fire retardant with the ghillie suits.

21. The "Inspecta-Shield" fire retardant is manufactured by Defendant New York Fire-Shield. The smallest bottle of fire retardant that New York Fire-Shield manufactures is a 32-ounce bottle.

22. New York Fire-Shield sold "Inspecta-Shield" fire retardant to Defendant Fire Shield West and/or Defendant Gary Crossland.

23. The product was then distributed and sold to Muirhead and Ghillie Suits.com.

24. No specific on-product directions were provided from Muirhead and Ghillie Suits.com on how to properly apply the fire retardant. Further no separate written instructions were supplied by Muirhead and Ghillie Suits.com on how to properly apply the fire retardant.

25. There were no on-product instructions provided by Defendants Muirhead and Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the fire retardant would be degraded. Further, no separate written instructions were supplied by Muirhead and Ghillie Suits.com on how frequently to reapply the fire retardant or under what conditions the fire retardant would be degraded.

26. No specific instructions were provided by Defendant Wackenhut's instructors, controllers or coordinators regarding the application of the fire retardant to the ghillie suits.

27. The three marines applied the fire retardant to all of the ghillie suits approximately two weeks prior to any training being conducted.

28. Defendant Wackenhut was involved in the acquisition of the weapons used during Exercise Pacific Patriot.

29. Defendant Wackenhut obtained M-240 machine guns as specified in the OPFOR plan; however, there were not enough M-240s in inventory to fulfill the quota for the exercise; therefore, Defendant Wackenhut also obtained M-60 machine guns.

30. A greater concentration of the PEGSI (Propellant Exhaust Gas Secondary Ignition) is

associated with the operation of the M-60 machine gun as opposed to the M-240, thus increasing the risk to the operator.

31.    All training with weapons was blank fire.

32.    Defendant Wackenhut provided Certified Armorers for Exercise Pacific Patriot who were designated to maintain the firearms used in the exercise.

33.    Another responsibility of Defendant Wackenhut's Certified Armorers was to inspect the firearms used in the exercise to ensure that the firearms met the inspection specifications.

34.    One of the purposes for Defendant Wackenhut's Armorers to inspect the firearms used in the exercise was to ensure the safety of such firearms.

35.    Following the incidents made the basis of this lawsuit, the machine gun involved was inspected by several certified armorers which consisted of Jimmy Hudlow, Robert Gee, Mark Brown and Sgt. James Vaca.

36.    Armorers Robert Gee and Mark Brown found that the machine gun contained a loose and mushroomed blank firing attachment/adaptor, a receiver which was slightly bent, and a broken firing pin spring.

37.    Sgt. James Vaca found that the machine gun contained a loose gas plug and that the stripper lug had a loss of radius.

38.    The following inadequacies did not meet the Inspection Criteria for the M-60 machine gun: a loose and mushroomed blank firing attachment/adaptor, a receiver which was slightly bent, a broken firing pin spring, a loose gas plug, and the stripper lug with a loss of radius .

39.    Defendant Wackenhut provided several controllers, Operational Readiness Training (ORT) instructors, coordinators and others who were responsible for the Marines' safety.

40.    These controllers, Operational Readiness Training (ORT) instructors, coordinators and others provided by Defendant Wackenhut were also responsible for the safety of the gear, equipment, and weapons provided for the exercise.

41.    The controllers, instructors and coordinators, some of which also taught firearms safety courses to the Marines involved in Exercise Pacific Patriot, did not appreciate the hazards of

1  combining the use of a Machine gun with a ghillie suit.

2      42.    According to the NNSA (National Nuclear Security Administration) Type B

3  Investigation report, the Board found a dichotomy between the rigor applied to the safety measures

4  associated to the Federal Agent activities and processes as compared to those associated with the

5  Opposition Force (OPFOR) which consisted of the Marines.

6      43.    On the morning of October 28, 2004, Plaintiffs Jeremy Ehart and Steven

7  McClanahan arrived at their fighting positions.    There was approximately 40-meters distance

8  between Plaintiff Steven McClanahan's fighting position and Plaintiff Jeremy Ehart's fighting

9  position. Both Plaintiffs Jeremy Ehart and Steven McClanahan were wearing the ghillie suits that

10  were purchased from Muirhead and Ghillie Suits.com.

11      44.    At approximately 11:05 on October 28, 2004, Plaintiff Jeremy Ehart engaged D.O.E.

12  agents in a convoy from their fighting positions. Plaintiff Jeremy Ehart was using an M60 machine

13  gun at the time of the incident.    At approximately 11:06 on October 28, 2004, Plaintiff Jeremy

14  Ehart's ghillie suit caught on fire.    Plaintiff Jeremy Ehart rose from his fighting position and ran

15  towards Plaintiff Steven McClanahan while calling for help.    Plaintiff Steven McClanahan, after

16  removing the blouse portion of his ghillie suit, attempted to put out the flames on Plaintiff Jeremy

17  Ehart by smothering the flames and attempting to get Plaintiff Jeremy Ehart to roll on the ground.

18      45.    In the process of attempting to rescue Plaintiff Jeremy Ehart, Plaintiff Steven

19  McClanahan's ghillie suit also caught on fire.    A paramedic arrived within two to three minutes of

20  the mayday call and used a fire extinguisher to put out the flames burning Plaintiff Ehart.    An

21  unidentified individual used a fire extinguisher to put out the flames burning Plaintiff McClanahan.

22      46.    In addition to airway swelling and lung injury, Plaintiff Jeremy Ehart sustained 50-

23  60% total body surface area burns, including both full thickness and partial thickness burns.    His

24  legs, from the groin to the area above the top of this boots, sustained full thickness burns. His right

25  arm from the shoulder down and his left arm from the mid-bicep down sustained a mix of full and

26  partial thickness burns. His face sustained full thickness burns. Plaintiff Jeremy Ehart was not able

27  to return to full active duty as a result of the catastrophic injuries sustained.    On the 28th day of

-9-

April, 2006, Plaintiff Jeremy Ehart was medically discharged from the United States Marine Corps due to the physical conditions sustained in the occurrence made the basis of this lawsuit.

47. Plaintiff McClanahan sustained 20-30% total body surface area burns on his legs and back. The burns varied from second degree partial thickness burns to third degree full thickness burns.

48. As a result of said injuries, Plaintiffs have received, and will in the future continue to receive, medical and hospital care and treatment provided by and through the United States of America. The Plaintiffs, for the sole use and benefit of the United States of America, under the provisions of 42 U.S.C. §§ 2651-2653 et seq. and 10 U.S.C. §1095, and with its express consent, assert a claim for the cost of said medical and hospital care and treatment and the value of future care.

## COUNT ONE

**(Strict Liability – Design Defect – Against Muirhead, Ghillie Suits.com and Does 1 through 5)**

AS AND FOR A FIRST COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

49. Plaintiffs hereby reallege and incorporate paragraphs 1 through 48 as if fully set forth herein.

50. Plaintiffs are informed and believe and thereon allege that said Defendants, at all times herein mentioned, were in the business of manufacturing, researching, designing, assembling, testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for sale and selling to and for the use of the general public ghillie suits, or components of it manufactured by said Defendants, which is the subject matter of this Complaint. Said Defendants are responsible in some manner for placing said product or causing it to be placed into the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendants, and each of them.

51.    At the time said Plaintiffs used said ghillie suits, the suits were substantially the same as when they left the possession of said Defendants. Any changes made to the suits after they left said Defendants' possession, such as the application of fire retardant spray to said suits, were reasonably foreseeable to said Defendants.

52.    Said ghillie suits did not perform as safely as an ordinary consumer would have expected at the time of use, in that the suits were highly flammable despite the fire retardant sprayed on them. The suits were used in a way that was reasonably foreseeable to said Defendants.

53.    Said Defendants, by way of advertisement and through their website, made certain representations and misrepresentations concerning the character or quality of the ghillie suits and fire retardant sold by said Defendants. The purchaser of the ghillie suits relied upon the misrepresentation made by said Defendants and passed on the ghillie suits and fire retardant, which gave rise to the physical injuries to Plaintiffs as set out above and below.

54.    While utilizing said ghillie suits in the manner intended, said Plaintiffs were injured in their health, strength, and activity, and sustained injury to their body and shock and injury to their nervous system and persons, all of which have caused and continue to cause them great mental, physical, and nervous pain and suffering. These injuries will result in some permanent disability to said Plaintiffs, all to their general damage. The flammability of said ghillie suits and failure to perform safely was a substantial factor in causing Plaintiffs' harm.

55.    As a further legal result of the conduct of said Defendants, and each of them, said Plaintiffs were required to and did employ physicians, surgeons and nurses for examination, treatment and care, and incurred and will continue to incur additional medical and incidental expenses, the exact amount of which is unknown to said Plaintiffs at this time.

56.    As a further legal result of the conduct of said Defendants and because of Plaintiffs' injuries, said Plaintiffs have been, and will continue to be, prevented from working in their occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time. Plaintiffs are informed and believe that their inability to work and/or reduction in their earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning

-11-

capacity, the exact amount of which is unknown to said Plaintiffs at this time.

As a further legal result of the conduct of said Defendants, said Plaintiffs have incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

## COUNT TWO

### (Strict Liability – Design Defect – Against New York Fire-Shield and Does 8-10)

AS AND FOR A SECOND COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 8-10 as follows:

57. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 56 as if fully set forth herein.

58. Plaintiffs are informed and believe and thereon allege that said Defendants, at all times herein mentioned, were in the business of manufacturing, researching, designing, assembling, testing, producing, constructing, assembling, inspecting, distributing, marketing, and advertising for sale and selling to and for the use of the general public Inspecta-Shield fire retardant, or components of it manufactured by said Defendants, which is the subject matter of this Complaint. Said Defendants are responsible in some manner for placing said product or causing it to be placed into the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendants, and each of them.

59. At the time Plaintiffs used said fire retardant, the product was substantially the same as when they left the possession of said Defendants.

60. Said fire retardant did not perform as safely as an ordinary consumer would have expected at the time of use, in that the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven McClanahan as described above were highly flammable despite the fire retardant being sprayed on them. The fire retardant was used in a way that was reasonably foreseeable to said Defendants.

61. Said Defendants, by way of advertisement and/or through their website, made certain representations and misrepresentations concerning the character or quality of the fire retardant sold

-12-

by and supplied to Ghillie Suits.com. Ghillie Suits.com relied upon the misrepresentation made by Defendant New York Fire-Shield and Does 8-10, and passed on the fire retardant, which gave rise to the physical injuries to said Plaintiffs as set out above and below.

62.     While utilizing said fire retardant in the manner intended, said Plaintiffs were injured in their health, strength, and activity, and sustained injury to their body and shock and injury to their nervous system and persons, all of which have caused and continue to cause them great mental, physical, and nervous pain and suffering. These injuries will result in some permanent disability to said Plaintiffs, all to their general damage. The flammability of said ghillie suits despite the use of fire retardant spray and the failure of said spray to perform safely was a substantial factor in causing Plaintiffs' harm.

63.     As a further legal result of the conduct of said Defendants, said Plaintiffs were required to and did employ physicians, surgeons and nurses for examination, treatment and care, and incurred and will continue to incur additional medical and incidental expenses, the exact amount of which is unknown to said Plaintiffs at this time.

64.     As a further legal result of the conduct of said Defendants and because of Plaintiffs' injuries, said Plaintiffs have been, and will continue to be, prevented from working in their occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time. Plaintiffs are informed and believes that their inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to said Plaintiffs at this time.

65.     As a further legal result of the conduct of said Defendants, said Plaintiffs have incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

## **COUNT THREE**

**(Strict Liability – Design Defect – Against Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield West as a division of Garland**

1    Company, Inc.)

2    AS AND FOR A THIRD COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and

3    Steven McClanahan allege against Defendant Garland Company, Inc., also known as and/or doing

4    business as Fire Shield West, and/or Fire Shield West as a division of Garland Company, Inc.,

5    formerly designated as DOE 6 as follows:

6        66.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 65 as if fully set

7    forth herein.

8        67.    Plaintiffs are informed and believe and thereon allege that said Defendant, at all

9    times herein mentioned, were in the business of manufacturing, researching, designing, assembling,

10   testing, producing, constructing, assembling, inspecting, distributing, wholesaling, retailing, retail

11   distributing, marketing, and/or advertising for sale and/or selling to and for the use of the general

12   public Inspecta-Shield fire retardant, or components of it by said Defendant, which is the subject

13   matter of this Complaint. Said Defendant is responsible in some manner for placing said product or

14   causing it to be placed into the stream of commerce, such that Plaintiffs' injuries as hereinafter

15   alleged were legally caused by the acts of said Defendant.

16       68.    At the time Plaintiffs used said fire retardant, the product was substantially the same

17   as when they left the possession of said Defendant.

18       69.    Said fire retardant did not perform as safely as an ordinary consumer would have

19   expected at the time of use, in that the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven

20   McClanahan as described above were highly flammable despite the fire retardant being sprayed on

21   them. The fire retardant was used in a way that was reasonably foreseeable to said Defendant.

22       70.    Said Defendant, by way of advertisement and/or sales, made certain representations

23   and misrepresentations concerning the character or quality of the fire retardant sold by and supplied

24   to Ghillie Suits.com. Ghillie Suits.com relied upon the misrepresentations made by Defendant

25   Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield

26   West as a division of Garland Company, Inc., formerly designated as DOE 6, and passed on the fire

27   retardant, which gave rise to the physical injuries to said Plaintiffs as set out above and below.

-14-

71. While utilizing said fire retardant in the manner intended, said Plaintiffs were injured in their health, strength, and activity, and sustained injury to their body and shock and injury to their nervous system and persons, all of which have caused and continue to cause them great mental, physical, and nervous pain and suffering. These injuries will result in some permanent disability to said Plaintiffs, all to their general damage. The flammability of said ghillie suits despite the use of fire retardant spray and the failure of said spray to perform safely was a substantial factor in causing Plaintiffs' harm.

72. As a further legal result of the conduct of said Defendant, said Plaintiffs were required to and did employ physicians, surgeons and nurses for examination, treatment and care, and incurred and will continue to incur additional medical and incidental expenses, the exact amount of which is unknown to said Plaintiffs at this time.

73. As a further legal result of the conduct of said Defendant and because of Plaintiffs' injuries, said Plaintiffs have been, and will continue to be, prevented from working in their occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time. Plaintiffs are informed and believes that their inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to said Plaintiffs at this time.

74. As a further legal result of the conduct of said Defendant, said Plaintiffs have incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

## COUNT FOUR

### (Strict Liability – Design Defect – Against Gary B. Crossland, individually)

AS AND FOR A FOURTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendant Gary B. Crossland, individually, formerly designated as DOE 7 as follows:

75. Plaintiffs hereby re-allege and incorporate paragraphs 1 through 73 as if fully set

-15-

forth herein.

76.   Plaintiffs are informed and believe and thereon allege that said Defendant, at all times herein mentioned, was in the business of manufacturing, researching, designing, assembling, testing, producing, constructing, assembling, inspecting, distributing, wholesaling, retailing, retail distributing, marketing, and/or advertising for sale and/or selling to and for the use of the general public Inspecta-Shield fire retardant, or components of it by said Defendant, which is the subject matter of this Complaint. Said Defendant is responsible in some manner for placing said product or causing it to be placed into the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendant.

77.   At the time Plaintiffs used said fire retardant, the product was substantially the same as when they left the possession of said Defendant.

78.   Said fire retardant did not perform as safely as an ordinary consumer would have expected at the time of use, in that the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven McClanahan as described above were highly flammable despite the fire retardant being sprayed on them. The fire retardant was used in a way that was reasonably foreseeable to said Defendant.

79.   Said Defendant, by way of advertisement and/or sales, made certain representations and misrepresentations concerning the character or quality of the fire retardant sold by and supplied to Ghillie Suits.com. Ghillie Suits.com relied upon the misrepresentations made by Defendant Gary Crossland, individually, formerly designated as DOE 7, and passed on the fire retardant, which gave rise to the physical injuries to said Plaintiffs as set out above and below.

80.   While utilizing said fire retardant in the manner intended, said Plaintiffs were injured in their health, strength, and activity, and sustained injury to their body and shock and injury to their nervous system and persons, all of which have caused and continue to cause them great mental, physical, and nervous pain and suffering. These injuries will result in some permanent disability to said Plaintiffs, all to their general damage. The flammability of said ghillie suits despite the use of fire retardant spray and the failure of said spray to perform safely was a substantial factor in causing Plaintiffs' harm.

81.     As a further legal result of the conduct of said Defendant, said Plaintiffs were required to and did employ physicians, surgeons and nurses for examination, treatment and care, and incurred and will continue to incur additional medical and incidental expenses, the exact amount of which is unknown to said Plaintiffs at this time.

82.     As a further legal result of the conduct of said Defendant and because of Plaintiffs' injuries, said Plaintiffs have been, and will continue to be, prevented from working in their occupations.  The amount of earnings which will be lost to said Plaintiffs is unknown at this time. Plaintiffs are informed and believes that their inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to said Plaintiffs at this time. As a further legal result of the conduct of said Defendant, said Plaintiffs have incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

### COUNT FIVE

**(Strict Liability -- Design Defect -- Against Wackenhut and Does 11 through 15)**

AS AND FOR A FIFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

83.     Plaintiffs hereby re-allege and incorporate paragraphs 1 through 82 as if fully set forth herein.

84.     Plaintiffs are informed and believe and thereon allege that said Defendants, at all times herein mentioned, were in the business of manufacturing, researching, designing, assembling, modifying, testing, producing, constructing, assembling, inspecting, maintaining, distributing and/or supplying for use machine guns or components of machine guns used during Exercise Pacific Patriot.  Said Defendants are responsible in some manner for placing said product or causing it to be placed into the stream of commerce, such that Plaintiffs' injuries as hereinafter alleged were legally caused by the acts of said Defendants, and each of them.

-17-

85. At the time Plaintiff Jeremy Ehart used said machine gun, the product was substantially the same as when they left the possession of said Defendants.

86. Said machine gun did not perform as safely as an ordinary consumer would have expected at the time of use, in that the amount of muzzle flash and receiver signature on said gun was not normal. The machine gun was used in a way that was reasonably foreseeable to said Defendants.

87. While utilizing said machine gun in the manner intended, said Plaintiffs were injured in their health, strength, and activity, and sustained injury to their body and shock and injury to their nervous system and persons, all of which have caused and continue to cause them great mental, physical, and nervous pain and suffering. These injuries will result in some permanent disability to said Plaintiffs, all to their general damage. The abnormal amount of muzzle flash and receiver signature on the gun was a substantial factor in causing Plaintiffs' harm.

88. As a further legal result of the conduct of said Defendants, said Plaintiffs were required to and did employ physicians, surgeons and nurses for examination, treatment and care, and incurred and will continue to incur additional medical and incidental expenses, the exact amount of which is unknown to said Plaintiffs at this time.

89. As a further legal result of the conduct of said Defendants, and because of Plaintiffs' injuries, said Plaintiffs have been, and will continue to be, prevented from working in their occupations. The amount of earnings which will be lost to said Plaintiffs is unknown at this time. Plaintiffs are informed and believes that their inability to work and/or reduction in his earning capacity will continue in the future, thereby causing a further loss of earnings and/or earning capacity, the exact amount of which is unknown to said Plaintiffs at this time.

90. As a further legal result of the conduct of said Defendants, said Plaintiffs have incurred damages in an ascertainable economic value, as hereinbefore alleged, and thus Plaintiffs are entitled to pre-judgment interest on said damages pursuant to Civil Code §3287 and/or §3288.

## COUNT SIX

### (Strict Liability – Failure to Warn – Against Muirhead, Ghillie Suits.com and

### Does 1 through 5)

AS AND FOR A SIXTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

91.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 90 as if fully set forth herein.

92.     The ghillie suits that were involved in the subject incident had been distributed, marketed and sold by said Defendants without adequate warnings and/or instructions.

93.     Said ghillie suits had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said suits were highly flammable despite the fire retardant sprayed on them.

94.     The potential risks of said ghillie suits presented a substantial danger to users of the product.  Ordinary consumers would not have recognized the potential risks described above.

95.     Said Defendants failed to adequately warn and/or instruct of the potential risks as described above.  Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it in smaller quantities than sold by the manufacturer.  The instructions provided by said Defendants with the 8-ounce bottles of fire retardant were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent an instantaneous and catastrophic fire.  The fire-resistant treatment recommended by said Defendants was not sufficient to adequately alter the flammability and fire performance characteristics of the ghillie suit.

96.     Said ghillie suits were used in a way that was reasonably foreseeable to said Defendants.

97.     While utilizing said ghillie suits in the manner intended by said Defendants, said Plaintiffs were injured as set forth above.  The lack of sufficient instructions and/or warnings was a

substantial factor in causing Plaintiffs' harm.

## COUNT SEVEN

### (Strict Liability – Failure to Warn – Against New York Fire-Shield and Does 8-10)

AS AND FOR A SEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 8-10 as follows:

98.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 97 as if fully set forth herein.

99.     The Inspecta-Shield fire retardant that was involved in the subject incident had been distributed, marketed and sold by said Defendants without adequate warnings and/or instructions.

100.     Said fire retardant had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said fire retardant, if not applied properly, resulted in material that was highly flammable despite the fire retardant being sprayed on the material.

101.     The potential risks of said fire retardant presented a substantial danger to users of the fire retardant product.  Ordinary consumers would not have recognized the potential risks described above.

102.     Said Defendants failed to adequately warn and/or instruct of the potential risks as described above.  Said Defendants also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant or instructions regarding how much fire retardant was needed to adequately alter the flammability and fire performance characteristics of the material on which it was being applied.  Said fire retardant was used in a way that was reasonably foreseeable to said Defendants.

103.     While utilizing said fire retardant in the manner intended by said Defendants, said Plaintiffs were injured as set forth above.  The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

**COUNT EIGHT**

**(Strict Liability – Failure to Warn – Against Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield West as a division of Garland Company, Inc.)**

AS AND FOR AN EIGHTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendant Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield West as a division of Garland Company, Inc. formerly designated as DOE 6, as follows:

104. Plaintiffs hereby reallege and incorporate paragraphs 1 through 103 as if fully set forth herein.

105. The Inspecta-Shield fire retardant that was involved in the subject incident had been distributed, marketed and/or sold by said Defendant without adequate warnings and/or instructions.

106. Said fire retardant had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said fire retardant, if not applied properly, resulted in material that was highly flammable despite the fire retardant being sprayed on the material.

107. The potential risks of said fire retardant presented a substantial danger to users of the fire retardant product. Ordinary consumers would not have recognized the potential risks described above.

108. Said Defendant failed to adequately warn and/or instruct of the potential risks as described above. Said Defendant also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant or instructions regarding how much fire retardant was needed to adequately alter the flammability and fire performance characteristics of the material on which it was being applied. Said fire retardant was used in a way that was reasonably foreseeable to said Defendant.

109. While utilizing said fire retardant in the manner intended by said Defendant, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a

-21-

substantial factor in causing Plaintiffs' harm.

## COUNT NINE

### (Strict Liability – Failure to Warn – Against Gary B. Crossland)

AS AND FOR AN ELEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendant Gary B. Crossland formerly designated as DOE 7, as follows:

110.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 109 as if fully set forth herein.

111.    The Inspecta-Shield fire retardant that was involved in the subject incident had been distributed, marketed and/or sold by said Defendant without adequate warnings and/or instructions.

112.    Said fire retardant had potential risks that were known or knowable by the use of scientific knowledge at the time of manufacture, distribution and/or sale, in that said fire retardant, if not applied properly, resulted in material that was highly flammable despite the fire retardant being sprayed on the material.

113.    The potential risks of said fire retardant presented a substantial danger to users of the fire retardant product.  Ordinary consumers would not have recognized the potential risks described above.

114.    Said Defendant failed to adequately warn and/or instruct of the potential risks as described above.  Said Defendant also did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant or instructions regarding how much fire retardant was needed to adequately alter the flammability and fire performance characteristics of the material on which it was being applied.  Said fire retardant was used in a way that was reasonably foreseeable to said Defendant.

115.    While utilizing said fire retardant in the manner intended by said Defendant, said Plaintiffs were injured as set forth above.  The lack of sufficient instructions and/or warnings was a substantial factor in causing Plaintiffs' harm.

## COUNT TEN

### (Strict Liability – Failure to Warn – Against Wackenhut and Does 11 through 15)

AS AND FOR A TENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

116. Plaintiffs hereby reallege and incorporate paragraphs 1 through 114 as if fully set forth herein.

117. The machine gun that was involved in the subject incidents had been distributed, modified, and/or supplied for use by said Defendants without adequate warnings and/or instructions. Said machine gun had potential risks that were known or knowable by the use of scientific knowledge at the time of distribution, modification and/or inspection in that the amount of muzzle flash and receiver signature on said gun was abnormal.

118. The potential risks of said machine gun presented a substantial danger to users of the product. Ordinary consumers would not have recognized the potential risks described above.

119. Said Defendants failed to adequately warn and/or instruct of the potential risks as described above.

120. Said machine gun was used in a way that was reasonably foreseeable to said Defendants.

121. While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. The lack of sufficient instructions and/or warnings was a substantial factor in causing said Plaintiffs' harm.

## COUNT ELEVEN

### (Negligence – Against Muirhead, Ghillie Suits.com and Does 1 through 5)

AS AND FOR AN ELEVENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Muirhead, Ghillie Suits.com and Does 1 through 5 as follows:

122. Plaintiffs hereby reallege and incorporate paragraphs 1 through 120 as if fully set

-23-

forth herein.

123.     Said Defendants were negligent in designing, manufacturing, supplying, and inspecting the ghillie suits worn by Plaintiffs Jeremy Ehart and Steven McClanahan. Said Defendants were also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous. Said Defendants were also negligent in failing to test the products they sold. Said Defendants knew or reasonably should have known that the ghillie suits were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

124.     Said Defendants knew or reasonably should have known that users would not realize the dangers of said ghillie suits.

125.     Said Defendants failed to adequately warn of the danger or instruct on the safe use of said product. Said Defendants did not provide proper instructions on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant after repackaging it in smaller quantities than sold by the manufacturer. The instructions provided by said Defendants were minimal, and therefore, the amount of retardant applied to the suits was inadequate to prevent an instantaneous and catastrophic fire. The fire-resistant treatment recommended by said Defendants was not sufficient to adequately alter the flammability and fire performance characteristics of the ghillie suit.

126.     A reasonable manufacturer, distributor or seller under same or similar circumstances would have warned of said foreseeable dangers or instructed on the safe use of the product.

127.     While utilizing said ghillie suits in the manner intended by said Defendants, said Plaintiffs were injured as set forth above. Said Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

## COUNT TWELVE

### (Negligence – Against New York Fire-Shield and Does 8-10)

AS AND FOR A TWELFTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy

-24-

Ehart and Steven McClanahan allege against Defendants New York Fire-Shield and Does 8-10 as follows:

128.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 126 as if fully set forth herein.

129.     Said Defendants were negligent in designing, manufacturing, supplying, and inspecting the Inspecta-Shield fire retardant used by Plaintiffs Jeremy Ehart and Steven McClanahan.  Said Defendants were also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous.  Said Defendants knew, or reasonably should have known, that the fire retardant was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

130.     Said Defendants knew or reasonably should have known that users would not realize the dangers of said Inspecta-Shield fire retardant.

131.     Said Defendants failed to adequately warn of the danger or instruct on the safe use of said product.  Said Defendants did not provide adequate warnings and instructions for use on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant to distributors and sellers or monitor how said fire retardant was being repackaged once it was sold by the manufacturer to distributors and sellers.

132.     A reasonable manufacturer, distributor, or seller, under the same or similar circumstances, would have warned of said foreseeable dangers and provided adequate instructions for the safe use of the product.

133.     While utilizing said fire retardant spray in the manner intended by said Defendants, said Plaintiffs were injured as set forth above.  Said Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

## COUNT THIRTEEN

**(Negligence – Against Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield West as a division of Garland Company, Inc.)**

AS AND FOR A THIRTEENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Garland Company, Inc., also known as and/or doing business as Fire Shield West, and/or Fire Shield West as a division of Garland Company, Inc. formerly designated as DOE 6, as follows:

134. Plaintiffs hereby reallege and incorporate paragraphs 1 through 133 as if fully set forth herein.

135. Said Defendant was negligent in designing, manufacturing, supplying, and/or inspecting the Inspecta-Shield fire retardant used by Plaintiffs Jeremy Ehart and Steven McClanahan. Said Defendant was also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous. Said Defendant knew, or reasonably should have known, that the fire retardant was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

136. Said Defendant knew or reasonably should have known that users would not realize the dangers of said Inspecta-Shield fire retardant.

137. Said Defendant failed to adequately warn of the danger or instruct on the safe use of said product. Said Defendant did not provide adequate warnings and instructions for use on how to apply the "Inspecta-Shield" fire retardant, nor did they provide an adequate quantity of fire retardant to distributors, sellers and retailers or monitor how said fire retardant was being repackaged once it was sold to distributors, sellers and retailers.

138. A reasonable manufacturer, distributor or seller, under the same or similar circumstances, would have warned of said foreseeable dangers and provided adequate instructions for the safe use of the product.

139. While utilizing said fire retardant spray in the manner intended by said Defendant, said Plaintiffs were injured as set forth above. Said Defendant's failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

-26-

**COUNT FOURTEEN**

**(Negligence – Against Gary B. Crossland)**

AS AND FOR A FOURTEENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendant Gary B. Crossland formerly designated as DOE 7, as follows:

140.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 138 as if fully set forth herein.

141.    Said Defendant was negligent in designing, manufacturing, supplying, and/or inspecting the Inspecta-Shield fire retardant used by Plaintiffs Jeremy Ehart and Steven McClanahan. Said Defendant was also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous. Said Defendant knew, or reasonably should have known, that the fire retardant was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

142.    Said Defendant knew or reasonably should have known that users would not realize the dangers of said Inspecta-Shield fire retardant.

143.    Said Defendant failed to adequately warn of the danger or instruct on the safe use of said product. Said Defendant did not provide adequate warnings and instructions for use on how to apply the "Inspecta-Shield" fire retardant, nor did he provide an adequate quantity of fire retardant to distributors, sellers and retailers or monitor how said fire retardant was being repackaged once it was sold to distributors, sellers and retailers.

144.    A reasonable manufacturer, distributor or seller, under the same or similar circumstances, would have warned of said foreseeable dangers and provided adequate instructions for the safe use of the product.

145.    While utilizing said fire retardant spray in the manner intended by said Defendant, said Plaintiffs were injured as set forth above. Said Defendant's failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

## COUNT FIFTEEN

### (Negligence – Against Wackenhut and Does 11 through 15)

AS AND FOR A FIFTEENTH COUNT TO THIS COMPLAINT, Plaintiffs Jeremy Ehart and Steven McClanahan allege against Defendants Wackenhut and Does 11 through 15 as follows:

146.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 145 as if fully set forth herein.

147.    Said Defendants were negligent in designing, modifying, supplying for use, maintaining and/or inspecting the machine gun used by Plaintiff Jeremy Ehart at the time and place described above.  Said Defendants were also negligent in failing to use reasonable care to warn or instruct about the product's dangerous condition or about facts that made the product likely to be dangerous.  Additionally, said Defendants were negligent in failing to test the machine gun at issue in conjunction with the ghillie suit.  Said Defendants knew or reasonably should have known that the machine gun at issue was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

148.    Said Defendants knew or reasonably should have known that users would not realize the dangers of said machine gun.

149.    Said Defendants failed to adequately warn of the danger or instruct on the safe use of said machine gun when combined with the use of a ghillie suit.

150.    A reasonable modifier, distributor, supplier or inspector under same or similar circumstances would have warned of said foreseeable dangers or instructed on the safe use of the product.

149.    While utilizing said machine gun in the manner intended by said Defendants, said Plaintiffs Jeremy Ehart and Steven McClanahan were injured as set forth above.  Said Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs' harm.

## COUNT SIXTEEN

### (Loss of Consortium – Against All Defendants)

AS AND FOR A SIXTEENTH COUNT TO THIS COMPLAINT, Plaintiff Kristy Ehart alleges against Defendants, and each of them, as follows:

150.    Plaintiff hereby realleges and incorporates paragraphs 1 through 149 as if fully set forth herein.

151.    At all times herein mentioned Plaintiff Kristy Ehart and Plaintiff Jeremy Ehart were husband and wife, respectively.  By reason of the injuries to Plaintiff Jeremy Ehart as described herein, Plaintiff Kristy Ehart has been deprived of the consortium of Plaintiff Jeremy Ehart.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all claims which a jury is permitted.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For general damages according to proof;

2.    For medical and incidental expenses according to proof;

3.    For loss of earnings and earning capacity according to proof;

4.    For prejudgment interest on all general and special damages according to law;

5.    For costs of suit herein; and,

6.    For such other and further relief as the court deems just and proper.

Dated: *2/26/00*

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

By: _____
CRAIG NEEDHAM
*Attorneys for Plaintiffs*

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: 2/28/08

NEEDHAM, DAVIS, KEPNER & YOUNG, LLP

By: _____

**CRAIG NEEDHAM**
*Attorneys for Plaintiffs*